UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | CRIMINAL ACTION NO. 2:09-CR-456 |
| | § | (CIVIL ACTION NO. 2:12-CV-310) |
| WELLES D BACON | § | |

**ORDER DENYING MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE,
DENYING CERTIFICATE OF APPEALABILITY**

Pending before the Court is Movant Welles D. Bacon's (Bacon) motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255, along with his Memorandum in Support. D.E. 98, 99. The government filed a combined response and motion to dismiss, and also filed affidavits from defendant's counsel. D.E. 107, 108, 109. Bacon filed a reply, a supplemental reply, medical records, and a second affidavit. D.E. 112, 113, 114, 118, 119. After considering the motion, the evidence, and the record from Bacon's original criminal proceedings, and for the reasons stated herein, the Court denies Bacon's motion and denies him a certificate of appealability.

## I. JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 2255.

## II. FACTS AND PROCEEDINGS

**A.    Criminal Offense**

Bacon was indicted on June 10, 2009, on five counts of possession of child pornography. D.E. 1. He was charged with multiple violations of 18 U.S.C. §§ 2252(A)(a)(5)(B), 2252A(b)(2), and 2256(8)(A). Each count alleged possession of a different computer file stored on at least three different mediums, all on or about February 6, 2009. Id.

**B.      Criminal Proceedings**

Bacon was arrested on June 11, 2009. He appeared in federal court with his retained counsel Grant Jones. He was released on bond. D.E. 7, D.E. 65. Bacon was advised of the charges against him and his constitutional rights. Id. at 3-5.

Bacon was arraigned on June 19, 2009. D.E. 66. At that hearing, he acknowledged having the indictment and having reviewed it with counsel. Id. at 3. Counsel Jones stated that he represented Bacon before he was indicted and Bacon knew the nature of the charges that would be brought against him. Id. Bacon was advised of his potential punishment at arraignment,

> 21 THE COURT: All right. The five counts, as they are
> 22 identical, carry an identical potential penalty, and the
> 23 *potential penalty for each count is not more than 10 years in*
> 24 *prison, a fine of not more than $250,000, any term of years*
> 25 *or life on supervised release*. And *if during the time period*
> 1 *while you are on supervised release your supervised release*
> 2 *is revoked, you may be imprisoned for additional time*. And
> 3 finally, there is a $100 special assessment. Do you
> 4 understand that those are the potential penalties you face
> 5 for each of the five counts charged against you?
> 6 THE DEFENDANT: Yes, sir.

Id. at 4-5 (emphasis added). Bacon denied that he had been recently treated for mental illness or drug or alcohol addiction. Id. at 5.

Bacon entered into a plea agreement with the government in July 2009. D.E. 25. In exchange for his plea of guilty to count four of the indictment, the government agreed to recommend that he be given maximum points for acceptance of responsibility, to recommend a sentence at the lowest end of the applicable guideline range, and to dismiss the remaining counts of the indictment after sentencing. Id. at ¶¶ 1, 2. The plea agreement also stated that "Neither the Government nor any law enforcement officer can or does make any promises or representations as to what sentence will be imposed by the Court." Id. at ¶ 5. The agreement also acknowledged

2

that Bacon's sentence would be determined with reference to the sentencing guidelines, and stated that "the Court may impose any sentence not more than 10 years imprisonment which is the maximum term provided for a violation of 18 U.S.C. § 2252, and that the sentence to be imposed is within the sole discretion of the Court . . . ." Id. at ¶ 6. The agreement further pointed out that any estimate of the probable sentencing range he received from his attorney, the Probation Office of the government was "a prediction, not a promise" and is not binding on the Court. Id. at ¶ 7. The agreement was signed by Bacon and attorney Jones. Id. at p. 5.

At rearraignment, Bacon was questioned by the Court. He testified that he had attended college, spent 29 years in the Marine Corps, was in good physical condition, had never had any substance abuse problems, had never been treated for a mental condition and believed he was competent to proceed. D.E. 67 at 6-7. Counsel Jones agreed he was competent. Id. at 8. Bacon further testified that he had enough time with counsel, had discussed the charges against him, counsel answered his questions and made time to see him or talk to him as necessary and Bacon did not need more time with counsel. Id. Bacon professed to be satisfied with the advice and efforts of counsel. Id. at 9. The government recited the elements of the offense of possession of child pornography. Id. at 10.The Court reviewed Bacon's trial rights with him. Id. at 11-13. Bacon testified he understood these rights and had discussed them with counsel. Id. at 13.

The government summarized the provisions of the plea agreement. Id. at 13-15. Bacon testified that the agreement was the entire agreement and he understood it. Id. at 15. The Court admonished Bacon that the Court was not a party to the plea agreement and the agreement was not binding on the Court, that Bacon would not know until sentencing whether the Court would accept any of the recommendations and at that time it would be too late for Bacon to withdraw his guilty plea. Bacon testified he understood. Id. at 16. Bacon identified his signature on the

agreement and testified that he read it completely and discussed it with counsel before he signed

it. Id. at 16.[1] The Court advised Bacon of the maximum punishment.[2] Id. at 16-17. The Court

---

[1]        3 THE COURT: Is that your plea agreement in front of
4 you labeled Memorandum of Plea Agreement with your signature
5 on the last page?
6 THE DEFENDANT: Yes, ma'am.
7 THE COURT: Did you read it completely before you
8 signed it and discuss it completely with Mr. Jones before you
9 signed it?
10 THE DEFENDANT: Yes, ma'am.

Id.

[2]        11 THE COURT: I am going to go over with you the
12 *maximum possible punishment, which is imprisonment up to 10*
13 *years plus a fine of up to $250,000, up to a lifetime of*
14 *supervised release, and a $100 special assessment. And you*
15 *should know that I usually give a lifetime of supervised*
16 *release in these cases. Does he know that, Mr. Jones*?
17 MR. JONES: I do not think he does know that.
18 THE COURT: Do you want to visit that, do you want
19 to visit with him on that?
20 MR. DUKE: The Court may wish to advise him that he
21 is likely to get sex offender registration as well, Your
22 Honor.
23 THE COURT: And *the sex offender registration* as
24 well. And that will happen.
25 MR. JONES: I have not discussed that with him.
1 THE COURT: Why don't you discuss that with him.
2 Thank you.
3 MR. JONES: Can we go --
4 THE COURT: Take all the time you need.
5 MR. JONES: Can we just go out in the hall for a
6 couple of minutes?
7 THE COURT: Sure.
8 MR. JONES: Okay.
9 (Off the record at 10:29 a.m. until 10:31 a.m.)
10 THE COURT: Yes, sir?
11 MR. JONES: We are ready to go ahead.
12 THE COURT: *You understand these things, Mr. Bacon*?
13 THE DEFENDANT: *Yes, ma'am.*
14 THE COURT: Let's go through that again, because I
15 was telling you what the maximum possible punishment is, and
16 that's imprisonment up to 10 years plus a fine of up to
17 $250,000, any term of years or life supervised release, which
18 is not unusual for me to give which is why I want you to know
19 that, and a $100 special assessment. And I am going to give
20 you -- do you understand that, sir?

also advised Bacon that if he violated his supervised release, he could be subject to revocation and a new term of imprisonment and could go in and out of the Bureau of Prisons several times beginning with his guilty plea. Id. at 18-19. Bacon testified he understood the full consequence of entering a guilty plea. Id. at 19. The Court discussed potential enhancements to Bacon's guideline calculation such as distribution, the number of images, the sadistic and masochistic nature of the images, involvement of children under age 12, the use of a computer, and whether there was a pattern of activity involving the sexual abuse or exploitation of children which would add 5 levels. Id. at 19-20. Bacon testified he had discussed these concepts with his attorney and understood them. Id. at 21.

The Court advised Bacon that counsel's view of the guidelines was not necessarily the same as the Court's and until after the preparation of the Presentencing Investigation Report (PSR), and after the sentencing hearing, the Court would not know what his sentence would be. Id. Bacon acknowledged that the images in count four involved a real child, not a computer generated image, that the child was under 12 years old, that the acts portrayed were, by definition, sadistic/or masochistic for the child. Id. at 21-24.[3] Bacon testified that it was his decision to plead guilty and his decision was made voluntarily.[4]

---

21 THE DEFENDANT: So far, yes, ma'am.

Id. at 16-17 (emphasis added)..

[3]      19 THE COURT: Do you understand also that Image 4 does
        20 include the image of a real child and not a computer-created
        21 child?
        22 THE DEFENDANT: Yes, ma'am.
        23 THE COURT: And that the child is under the age of
        24 12?
        25 THE DEFENDANT: Yes, ma'am.
        1 THE COURT: And that the acts portrayed are sadistic
        2 and/or masochistic for the child?
        3 MR. JONES: By definition.

The AUSA summarized the facts related to count four of the indictment and related to

relevant conduct. Id. at 25-31. Bacon agreed to the factual recitation, except for the allegation

that he removed images from his laptop computer to avoid detection by Customs. Bacon

acknowledged he used his personal computer to download child pornography while he was

---

4 THE DEFENDANT: By definition, yes, ma'am.
5 MR. JONES: By definition. In other words, the
6 definition, the figures fit that definition and we recognize
7 it, yes.
8 THE COURT: Yes, okay.
9 THE DEFENDANT: Yes, ma'am.
11 MR. DUKE: There is an application note that argues,
12 or suggests, I should say, that a grounds for upward
13 departure would be videos in excess of five minutes. Count 4
14 is over an hour.
15 THE COURT: Do you understand that, and it's
16 possible for an upward adjustment, no higher than 10 years,
17 however, do you understand that?
18 THE DEFENDANT: Yes, ma'am.
   *  *  *  *
4 MR. DUKE: Oh, he is well over the 600 that maxes
5 out. I think he has got 109 videos or something like that.
6 THE COURT: Is that right?
7 (Defendant conferring off the record with his counsel)
8 THE COURT: Was that right?
9 MR. JONES: Some, yes, some of the videos are not
10 child pornography. Many of them are.
   *  *  *  *
24 THE COURT: -- of 109 videos and 22 images, the
25 maximum amount I need to warn you for that may be included in
1 counting the numbers of videos and images that are child
2 pornography. Do you understand that, Mr. Bacon?
3 THE DEFENDANT: Yes, ma'am.

Id.
4

13 THE COURT: Has anyone forced you in any way to
14 plead guilty? Has anyone forced you in any way to plead
15 guilty?
16 THE DEFENDANT: No, ma'am.
17 THE COURT: Is your decision to plead guilty
18 entirely voluntary?
19 THE DEFENDANT: Yes, ma'am.

Id. at 24.

overseas and after he returned to Corpus Christi, Texas. Id. at 31-32.[5] Bacon then pled guilty to

count four of the indictment. Id. at 32.

The Court ordered preparation of the PSR. D.E. 16. After his guilty plea at rearraignment,

Bacon substituted new counsel. D.E. 18, 19.

The PSR calculated Bacon's base offense level to be 18 pursuant to U.S.S.G. §

2G2.(a)(1). D.E. 22 at ¶ 24. His base offense level was increased by two points due to the age of

the victim, less than 12 years old, pursuant to U.S.S.G. § 2G2.2(b)(2). Id. at ¶ 25. He received

four more points because the offense involved sadistic or masochistic conduct, two more because

the offense involved the use of a computer, and five additional because the offense involved 600

---

[5]      10 THE DEFENDANT: Except for the fact that it made a
11 comment that I removed items from my computer so that it
12 would not be shown through Customs. I did nothing regarding
13 removing anything from my computer with the knowledge that I
14 was trying to negate any problems with Customs. I put it on
15 my thumb drive --
16 THE COURT: So you were, anything that you removed
17 by way of child pornography was to protect your employer or
18 keep them from finding out about this?
19 THE DEFENDANT: No, ma'am. I never even put the,
20 used the office computer for anything like that. It was all
21 my personal computer.
22 THE COURT: All your personal computer?
23 THE DEFENDANT: Yes, ma'am.
24 THE COURT: And you carried the flash drives around
25 so you could put them in other computers if you wanted to?
1 THE DEFENDANT: Yes, ma'am, and I kept buying
2 additional flash drives as the gigabytes kept getting more.
3 THE COURT: I understand. Any other mistakes
4 anywhere in this report, anywhere in this recitation by
5 Mr. Duke?
6 THE DEFENDANT: I can't recall another thing, no,
7 ma'am.
8 THE COURT: All right. Then I am satisfied -- you
9 knew you were possessing this type of child pornography?
10 THE DEFENDANT: Yes, ma'am.
Id.

or more images. Id. at ¶¶ 26-28. His adjusted offense level was 31. After credit for acceptance of responsibility, Bacon's total offense level was 28. Id. at ¶ 36.

The Probation Department interviewed Bacon's daughters. During those interviews, Probation learned of allegations that two of Bacon's daughters were sexually abused by him beginning at ages 3 and 5 and continuing until each daughter's mid-teens. Id. at ¶¶ 44-45.

Bacon had no criminal convictions. Id. at  ¶¶ 57-58. His guideline sentencing range was 78 to 97 months with a maximum term of imprisonment of 120 months. Id. at ¶¶ 59-60. The PSR further noted that in cases involving child crimes and sexual offenses, downward departures are permitted

> only if (1) the factor(s) has been affirmatively and specifically identified as permissible grounds of downward departure in the sentencing guidelines or policy statements issued under 28 U.S.C. § 994(a), taking into account of any amendments to such guidelines or policy statements by acts of Congress; (2) has not been adequately taken into consideration by the Sentencing Commission in formulating the guidelines; and (3) should result in a sentence different from that described. Only the grounds enumerated in Part K, Chapter 5 are the sole grounds that have been affirmatively and specifically identified as permissible grounds of downward departure; grounds not specifically listed in this section are not permissible.

Id. at ¶ 77. Additionally, the PSR noted that if the number of images substantially under represents the number of minors depicted, an upwards departure may be warranted. Bacon possessed 22 still images and 109 videos which equate to 8197 images. Id. at ¶ 78.

After the PSR was prepared, sentencing counsel Ron Barroso filed exhibits for sentencing that consisted of, a letter of support from one of Bacon's son-in-laws, military awards and commendations, civilian awards and recognition for Bacon's work overseas, recognition for

coaching and umpiring Little League, and photographs of Bacon receiving awards/medals. D.E. 26.

Bacon's counsel filed objections to the PSR paragraphs 44 and 45, the allegations of sexual abuse by his daughters, and sought leave to present evidence to rebut the allegations. D.E. 27. Sentencing was continued. The government filed a sentencing memorandum in support of the victim's restitution request. D.E. 29. Some of the pornographic images Bacon possessed were from the "Vicky" series. The victim submitted a request for restitution pursuant to 18 U.S.C. § 2259(b)(4). The government filed an objection to the PSR on the grounds that the PSR did not include the restitution request and responded to Bacon's objections by stating it would bring witnesses to testify at sentencing. D.E. 30.

The Probation Department amended the PSR in December 2009. D.E. 32. The amended report added five levels to Bacon's offense level based upon his "pattern of activity involving the sexual abuse or exploitation of a minor" as a result of Bacon's sexual abuse of his daughters. Id. at ¶ 27. The change resulted in a final offense level of 33 after credit for acceptance of responsibility. Id. at ¶¶ 28-37. The offense level increase changed Bacon's sentencing guideline range to 120 months, the statutory maximum. Id. at ¶ 61.

After preparation of the PSR, Bacon's counsel filed additional exhibits in aid of sentencing (D.E. 35) and additional objections. D.E. 36. The additional exhibits included a letter from Bacon's eldest daughter Terri and a letter from a family Bacon befriended while overseas. D.E. 35. Bacon objected to the five level increase for pattern of sexual abuse or exploitation of a minor. D.E. 36. The government responded to the objection. D.E. 37.

The sentencing hearing was called on December 14, 2009. At the beginning of the hearing, the Court discussed the issue of restitution which had not been addressed at

rearraignment. D.E. 68 at 3. The Court gave Bacon the opportunity to vacate his plea and start over. Counsel rejected the offer.[6] Bacon requested a continuation of the hearing and an opportunity to brief the enhancement. The Court set a briefing schedule, set a hearing to conclude sentencing after briefing, and proceeded to hear evidence for sentencing. D.E. 68 at 6.

Bacon testified that he was mentally competent and had received a copy of the original PSR more than 35 days ago. Id. at 11. He only received the amended PSR the morning of the hearing. Id. Counsel agreed that Bacon was competent. Bacon testified he reviewed the original PSR and discussed it with counsel. Id. at 12. Bacon was satisfied with the advice and efforts of sentencing counsel. Id. at 12-13. As to the objections, according to counsel, Bacon did not deny that he molested two of his daughters, but he denied some of the abuse incidents reported in the PSR. Id. at 14. Bacon denied there were any other mistakes in the report. Id. at p. 15.[7]

The Court read the victim impact statement from "Vicky," the government read the letters from her mother and step-father. Id. a 17-24. The first witness to testify at sentencing was Bacon's daughter Laurie. Id. at 26-27. She testified that Bacon began to molest her when she was between the ages of 2 and 4. She had a specific memory of a time when she and her sister Terri were in the bathtub, her father had an erection and wanted the girls to touch him. Id. at 27. Laurie refused and Bacon put Terri in front of her. Id. at 28. Another time, when Laurie was four

---

[6]    But the restitution I didn't warn him about at the
      13 time of the plea. Now, we can start all over and vacate the
      14 plea if you-all agree to it, but I --
      15 MR. BARROSO: No, that's not what --
      16 THE COURT: Yes, I thought not. So you didn't know
      17 about the statute before you --

Id.

[7]    22 THE COURT: Are there any -- Mr. Bacon, let me ask
      23 you, other than what your attorney has pointed out, are there
      24 any mistakes anywhere in this report?
      25 THE DEFENDANT: Not that I saw, Your Honor.

Id.

years old or younger, her father put her on a table and touched her private parts. Id. According to Laurie, she and Terri shared a room and her father would assault Terri when Laurie resisted him. Id. at 30. Laurie also testified that her father tried to rape her when she was 17, but she got away to a neighbor's house. Id. at 32.

Bacon's daughter Danielle also testified that her father molested her as a child. Id. at 45. The molestation began when she was five and ended when she was about 14. Id. at 46. Bacon kissed her, required her to perform oral sex on him, and he attempted penetration, but did not succeed. He also touched her genitals. Id. She has a clear memory of five incidents, but the abuse occurred too many times to count. Id. at 47. She was in counseling for 30 years to deal with issues caused by the abuse and her mother's inability or unwillingness to protect her. Laurie and Terri are both older than Danielle. Id. at 48-49.

The defense called daughter Terri, the eldest daughter. Id. at 55. She testified that her father sexually abused her once when she was 6 years old. Id. She is adopted as is Laurie. According to Terri, her father was an alcoholic at that time. Id. at 56. Terri denied that the bathtub incident took place. Id. at 57. Terri testified she told her mother after the single incident and her father never tried anything again. Id. at 58. Terri also denied any abuse by her father when she and Laurie shared a room. Terri has no recollection that Laurie ever claimed to have been abused by their father, although Terri came to know that Danielle was abused after Danielle began counseling. Id. at 60. Her father stopped drinking in 1977. Id. at 63. Terri also testified that her father was harshly physically disciplined by his own father. She learned that from talking to cousins and other family members. Id. at 65-66.

Bacon's youngest daughter Michelle also testified. Id. at 67. She was never sexually abused by her father. Id. Laurie never told Michelle that their father sexually abused her although

she has confided other very personal information. Id. at 68-69. Michelle knew about her father's abuse of Terri and Danielle. Id. at 68.

Sentencing resumed on January 15, 2010. Sentencing counsel reurged his objection to the imposition of a five point enhancement for pattern of exploitation based on conduct that was 30 years old. Counsel also urged the Court to consider the exhibits filed for sentencing that establish that Bacon served his country  in an exemplary manner both as a Marine and as a civilian, the danger to Bacon as a 72 year old man going into prison after being convicted of this offense, that Bacon's blood pressure spiked while awaiting sentencing and some lesions reappeared on his face. As a result counsel asked the Court to recommend Bacon be sent to a medical facility for evaluation and to a facility near Fort Worth where he has family. Bacon's son-in law, Terri's husband, read a statement to the Court, as did Terri. Id. at 18-24. Additionally, Terri read some emails from her father from when he was in Iraq. The emails detailed his stress reactions from the bombing that occurred around him, from the vigilance required of those serving in combat zones, and Bacon's feelings of threat from even normal situations. Id. at 24-30.

After Bacon spoke to the Court, the Court sentenced him to 120 months in the Bureau of Prisons, lifetime supervised release, a $10,000 fine and a $100 special assessment. Id. at 37. Bacon was advised of his right to appeal. Id. at 39. The Court advised Bacon that "if I had only considered the factors in 3553A and if there had not been a statutory maximum, you would have had a much higher sentence, looking at the nature and circumstances of the offense and history and  characteristics of you in particular. And most important is to afford adequate deterrence to your criminal conduct and protect the public from your future crimes and behavior. If there had - - I cannot imagine ever giving you a sentence less than 120 months." Id. at 40.

### III.  MOVANT'S CLAIMS

As his first ground, Bacon claims that his conviction was obtained in violation of the Fourth Amendment to the United States Constitution after the illegal search of his home and through his illegally obtained statement. D.E. 98 at p. 4. Bacon's memorandum of law further alleges that the search of his home was warrantless. D.E. 99 at p.11.  He also claims that counsel should have moved to suppress Bacon's statements. Id. at p. 14. Bacon claims his statement was coerced because the search warrant was executed by agents whose guns were drawn. Id.

Next, Bacon claims that his conviction was obtained in violation of the Fifth and Sixth Amendments to the United States Constitution through the violation of his right to Due Process and his right to effective assistance of counsel. D.E. 98 at 5. Bacon claims that his counsel induced his plea by "grossly underestimating Bacon's sentencing exposure, telling him he faced a *maximum* sentence under the Guidelines of four (4) to six (6) years." Id. (emphasis added). Bacon also claims counsel told him that he would "most likely" receive a sentence of home confinement." Id.

In his third ground of relief, Bacon claims that counsel was ineffective at sentencing in violation of the Sixth Amendment. He contends that counsel failed to, 1) learn relevant facts about Bacon's life, 2) make appropriate motions for departure, or 3) bring relevant facts to the Court's attention to mitigate or reduce his sentence. Id. at p. 7. As part of this claim, Bacon contends that counsel should have objected to the Court's automatic imposition of lifetime supervised release. Id. In his memorandum of law, Bacon admits that counsel filed a sentencing memorandum that urged the Court to consider Bacon's law abiding history, his vulnerability to abuse in prison, and the arbitrary and irrational nature of the pornography guidelines. D.E. 99 at p. 18. Bacon further claims that counsel did not urge the Court to consider his childhood physical

abuse by his parents or his PTSD, or on "a multitude of other acceptable bases." Id. He also claims his sentence was too long. Id. at 19-20. He claims that because this is his first conviction, he is entitled to a downward variance and a downward departure, and a departure for the ruin of his reputation. Id. at p. 20.

Bacon's fourth ground of relief claims that counsel was ineffective in plea negotiations because counsel exposed his client to a statutory maximum of ten years when there were "other, less serious charges [] available to plead to;" counsel failed to seek any sentencing concessions from the government, and failed to "lock in" an agreed offense level. Bacon further alleges that counsel "stated he 'could not' go to trial based upon his fear of the district judge and what she may do to his legal career." Id.

In his memorandum, Bacon claims that appellate counsel was ineffective because he failed to raise the following issues, 1) his sentence exceeded the maximum term explained to Bacon at his plea and 2) the failure to raise a proper suppression motion. Id. at p. 27.

The government responded that Bacon's claims are contradicted by the record and are without merit or are conclusory. D.E. 109 at pp. 26-56.

Bacon replied to the government and added to his claim that appellate counsel was ineffective, this time because counsel failed to raise the issue of lifetime supervised release. D.E. 113 at p. 19. Bacon also claims that because he has not been able to view the affidavit supporting the search warrant of his home in this proceeding, the warrant was invalid. Id. at pp. 3-5.

## IV.  ANALYSIS

**A.      28 U.S.C. § 2255**

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside or correct his sentence: 1) constitutional issues, 2) challenges to the district court's jurisdiction to impose the sentence, 3) challenges to the length of a sentence in excess of the statutory maximum, and 4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; United States v. Placente, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992) (per curiam). "[A] collateral challenge may not do service for an appeal." United States v. Frady, 456 U.S. 152, 165 (1982).

**B.      Standard for Ineffectiveness of Counsel**

An ineffective assistance claim presented in a § 2255 motion is properly analyzed under the two-prong analysis set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984). United States v. Willis, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his counsel's performance was both deficient and prejudicial. Id. This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. United States v. Dovalina, 262 F.3d 472, 474-75 (5th Cir. 2001). To show that his attorney's performance at sentencing in a noncapital case was prejudicial under Strickland, the movant must demonstrate

that counsel's error led to some increase in the length of his imprisonment. Glover v. United States, 531 U.S. 198, 203 (2001); United States v. Herrera, 412 F.3d 577, 581 (5th Cir. 2005).

"The entitlement to effective assistance does not end when the sentence is imposed, but extends to one's first appeal of right." United States v. Williamson, 183 F.3d 458, 462 (5th Cir. 1999) (citing Evitts v. Lucey, 469 U.S. 387, 394 (1985); Green v. Johnson, 160 F.3d 1029, 1043 (5th Cir. 1998)). Counsel's appellate performance is judged under the same Strickland, standard applicable to trial performance. 466 U.S. 668 (1984). "When a claim of ineffective assistance of counsel is premised on counsel's failure to raise an issue on appeal, 'the prejudice prong first requires a showing that [the Fifth Circuit] would have afforded relief on appeal.'" United States v. Reinhart, 357 F.3d 521, 530 (5th Cir. 2004) (quoting United States v. Phillips, 210 F.3d 345, 350 (5th Cir. 2000)).

If the movant fails to prove one prong, it is not necessary to analyze the other. Armstead v. Scott, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"); Carter v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

## C.     Counsel's Alleged Ineffective Assistance Before Plea

Bacon claims that counsel provided ineffective assistance before Bacon pled guilty by failing to conduct a proper investigation, underestimating Bacon's sentencing exposure, and because Bacon's plea was not supported by a sufficient factual basis. D.E. 98 at 5, 8; D.E. 119 at 9.

1.  *Claim that counsel underestimated Bacon's sentencing exposure and his plea was involuntary*

Bacon claims he was induced to plead guilty because he was allegedly told by counsel Barroso he would get a maximum sentence of 4 to 6 years and most likely would be sentenced to home confinement. In his motion, Bacon does not identify counsel. In Bacon's affidavit, he alleges that counsel *Barroso* told him that his maximum sentencing exposure was 4 to 6 years and that "most probably" he would be sentenced to home confinement. D.E. 98 at 1, 5 (emphasis added). Bacon states that the prospect of home confinement "strongly influenced him to enter a plea of guilty rather than take my chances at trial." Id.

Mr. Barroso was Bacon's sentencing counsel and did not meet or represent Bacon until after Bacon pled guilty.  D.E. 107 at p. 1; D.E. 108 at p. 1. Counsel Jones, who represented Bacon before Bacon pled guilty states that he "estimated Bacon's final offense level, but [] never assured or  promised  him that  he would get a particular term of years." D.E. 107 at p. 1. As to Bacon's claim that counsel told him he would "most likely" be sentenced to home confinement, counsel Jones denies making that statement as well. Id.

After counsel filed their affidavits, Bacon filed a reply, but did not amend his affidavit on this issue. Bacon's later unsworn allegation that Counsel Jones made the alleged representations regarding sentencing exposure and home confinement is not entitled to weight in these proceedings. The Fifth Circuit has previously rejected the use of unsworn allegations to create a fact issue in these cases. United States v. Gonzalez, 493 Fed. App'x. 541, 544 (5th Cir., Oct. 2, 2012) (per curiam) (designated unpublished).

> In light of Lafler and Frye, we conclude that Gonzalez's unsworn allegations, in addition . . . to the § 2255 motion that Gonzalez did not sign under penalty of perjury, are insufficient to create a factual issue regarding whether Gonzalez was denied his constitutional right to effective assistance of counsel. The record does not contain

> independent indicia of the likely merit of Gonzalez's unsworn allegations that counsel failed to inform him of any plea offer or to provide him with accurate advice regarding his sentencing exposure. Gonzalez's unsworn allegations cannot overcome the DEA Agent's sworn affidavit and other evidence proffered by the government.

Id. at 544 (internal citations omitted).

Bacon's claims that counsel misrepresented his sentencing exposure and the likelihood of home confinement are not supported by the record; the only evidence in the record contradicts his claims.

Furthermore, the federal Magistrate Judge advised Bacon at arraignment shortly after he was arrested, that his maximum sentence was ten years on each count, up to lifetime supervised release, a fine of up to $250,000, and a special assessment of $100 per count. Bacon was also advised that if he violated his supervised release, he could go to prison, in addition to his already served sentence. D.E. 66 at p. 4-5. Bacon was advised of the same information at rearraignment, including that as a result of violation of his supervised release he could go in and out of prison more than once, D.E. 67 at 19. Both at arraignment and at rearraignment Bacon testified he understood the range of punishment applicable to him.  His plea agreement further advised Bacon that he could be sentenced up to 10 years. D.E. 25 at ¶ 4. Bacon acknowledges in his reply that the Court advised him of the ten year maximum sentence of imprisonment. D.E. 113 at pp. 12-13. Bacon then argues that the Court did not tell him that he could be imprisoned for an additional two years if he violated his supervised release.

Bacon's testimony at rearraignment establishes that he was advised of the core issues to establish a voluntary plea. United States v. Gracia, 983 F.2d 625, 627–28 (5th Cir. 1993) ("When considering challenges to guilty plea proceedings, we have focused on three core concerns: absence of coercion, the defendant's understanding of the charges, and a realistic understanding

of the consequences of a guilty plea."). Compliance with the admonishments required under Rule 11 of the Federal Rules of Criminal Procedure provides "prophylactic protection for the constitutional rights involved in the entry of guilty pleas." See id. at 627.

Bacon's sworn statements in open court that he understood the range of applicable punishment and his plea was voluntary are entitled to a strong presumption of truthfulness. United States v. Lampaziane, 251 F.3d 519, 524 (5th Cir. 2001) (citing Blackledge v. Allison, 431 U.S. 63, 74 (1977)). Indeed, the Fifth Circuit affords "great weight to the defendant's statements at the plea colloquy." United States v. Cothran, 302 F.3d 279, 283-84 (5th Cir. 2002). Additionally, a signed, unambiguous plea agreement is accorded great evidentiary weight when deciding if the plea is entered voluntarily. See Bonvillan v. Blackburn, 780 F.2d 1248, 1252 (5th Cir. 1986). Bacon's plea agreement and his sworn statements preclude the relief he seeks here. The Court finds that Bacon's plea was voluntary.

### 2. *Counsel's alleged failure to conduct an adequate investigation before guilty plea*

Bacon alleges that counsel Barroso made up his mind that Bacon should plead guilty without conducting an appropriate investigation based upon counsel's claimed fear of this Court. D.E. 98 at p. 1. As previously discussed, counsel Barroso did not represent Bacon before his guilty plea. D.E. 108. Bacon later claimed in his unsworn reply, that counsel *Jones* failed to make an appropriate investigation. D.E. 119 at pp. 7-9. Counsel Jones described his investigation in his affidavit. D.E. 107.[8] The only evidence before this Court on this issue is Counsel Grant's

---

[8]  Jones affidavit states in part,

> In the memorandum in support, Mr. Bacon claims that I did not discuss with him possible defenses, nor did I investigate his case to determine if viable defenses were available. After reviewing the discovery materials, viewing samples of the illegal pictures in the AUSA's office, and conferring with Mr. Bacon, and reviewing documents and memorandums

affidavit. Bacon's unsworn allegation of improper investigation before the plea does not create a fact issue. See Gonzalez, 493 Fed. App'x. at 544 (unsworn allegations insufficient). This claim is without merit.

Furthermore, Bacon does not state what further investigation counsel should have undertaken or what such investigation would have revealed.[9] Bacon's failure to state specific facts in support of a claim renders the claim conclusory. Conclusory allegations on critical issues in a § 2255 proceeding are insufficient to raise a constitutional issue. United States v. Woods, 870 F.2d 285, 288 n. 3 (5th Cir. 1989); see also United States v. Jones, 614 F.2d 80, 82 (5th Cir. 1980) (failure of movant to state specific facts, "is insufficient to state a constitutional claim.").

3. *Alleged insufficient factual basis of Bacon's guilty plea*

Bacon claims in his reply that his guilty plea had an insufficient factual basis. D.E. 119 at p. 9. Bacon makes his claim in conjunction with his claim that counsel was ineffective before Bacon pled guilty. Bacon claims that his crime requires proof of an interstate nexus and the government failed to establish such a nexus. To the extent his claim is a free standing challenge to the sufficiency of the evidence to support his plea, it is not cognizable in this action. See Forrester v. United States, 456 F.2d 905, 907 (5th Cir. 1972); United States v. Garcia, 68 F.3d 466 (5th Cir. 1995).

Interstate nexus "may be shown if the images are contained on materials that traveled in interstate commerce or if the images themselves were transported in interstate commerce."

---

he provided to me, I could find no evidence of any viable defense to the charges, advised Mr. Bacon of this, and told him it would be in his best interest to take the plea offer.

Id. at p. 2.

[9]  The Court addresses Bacon's Fourth Amendment claim separately.

United States v. Terrell, 700 F.3d 755, 764 (5th Cir. 2012); United States v. Runyan, 290 F.3d 223, 239 (5th Cir. 2002). During the plea colloquy the government recited in part as to the facts,

> 12. . . Specifically Count 4, which is a file
> 13 entitled 79_Vicky-1997-goland.mpeg, comes from the known
> 14 child pornography series which is entitled the "Vicky
> 15 Series." That child was abused and photographed and that was
> 16 investigated in the State of Washington here in the United
> 17 States. That particular file was located on the Apacer usb
> 18 flash drive, which is the eight gigabyte black and white
> 19 thumb drive that Mr. Bacon had previously described and
> 20 acknowledged possessing.
>                *        *        *        *
> 3 . . . That
> 4 particular Apacer flash drive was manufactured in the country
> 5 of China. Essentially, those are the facts, Your Honor.

Id. at 30-31. Bacon agreed that these facts were correct. Id. at 32. The interstate nexus is established by Bacon's possession of images created in Washington State and his possession and use of a flash drive manufactured in China. The evidence also established that many of the images were downloaded from the internet which satisfies the interstate commerce element. See Runyan, 290 F.3d at 239 (holding that transmission of images over the internet satisfies interstate commerce element).  Bacon's claim that his counsel was ineffective on the ground that he did not ensure that the government could prove every element of count four is without merit.

4.  *Counsel's alleged ineffective assistance during plea bargaining*

Bacon claims counsel did nothing to ensure that he received the most favorable treatment possible during plea bargaining. Bacon was charged with five counts of possession of child pornography. As part of this claim Bacon alleges "Counsel exposed his client to a statutory maximum of ten years, when other, less serious charges were available to plead to; counsel failed to seek any sentencing concessions form [sic] the government, failed to 'lock in" an agreed offense level." D.E. 98 at p. 8. Bacon also alleges that unnamed counsel stated "that he 'could not' go to trial based on his fear of the district judge, and what she may do to his legal career." Id.

Bacon's plea agreement provided that the government would recommend the lowest end of the applicable guideline sentence, maximum credit for acceptance of responsibility, and dismissal of the remaining four counts of the indictment. D.E. 25 at ¶ 2. The government points out that Bacon has produced no evidence that counsel could have done any more for him in this respect. The government further states that it does not enter into plea agreements for specific sentences in this district. This Court may take notice that it routinely sees plea agreements similar in terms to that of Bacon's. The differences in plea agreements usually involve the nature of the government's agreement to make a sentencing recommendation within guidelines, at the high-end of the guidelines, or at the low or lowest end of the guidelines.

Counsel Jones' affidavit states that "the greatest concession the [AUSA] could offer was to permit Mr. Bacon to plead to one count, with a dismissal of the other four counts. This would reduce Mr. Bacon's prison time exposure to ten years." D.E. 107 at p. 2. Counsel was concerned that if Bacon chose to go to trial or plead guilty without a plea agreement, Bacon could be sentenced to five consecutive sentences. Id. Counsel Jones' affidavit also states that during his

22

discussions with the  government, the "AUSA never suggested he would consider permitting defendant to plead to any lesser included offense with a maximum punishment of less than 10 years." Id.

Bacon alleges that counsel's performance was deficient because count four produced the highest sentencing range. Count four involved a real child who was less than 12 years old and the video portrayed sadistic acts.

The PSR reflects that Bacon had been collecting child pornography since 2005. Bacon possessed 109 videos and 22 separate images of child pornography. The National Center for Missing and Exploited Children [NCMEC] identified "numerous images [] of child victims." D.E. 22 at ¶ 10. "Of the 109 videos, victims were identified from nine NCMEC series." Id. Several of the videos and image files contained images of victims who had not yet turned 12. "Some videos and image files depicted sadistic or masochistic conduct in that they depicted the sexual penetration of children under the age of twelve." Id. at ¶ 11. Based upon calculations in the sentencing guidelines, Bacon was held accountable for 8197 images. Id.; U.S.S.G. § 2G2.2, application note 4(B). It is apparent from this review that the image or video in count four was not the only image in Bacon's collection that depicted a real child under the age of 12 who was subjected to sadistic acts.

To further evaluate Bacon's claim that counsel did not do enough to secure a favorable plea agreement, the Court has reviewed sentences involved in other child pornography cases. United States v. Ellis, 720 F.3d 220 (5th Cir. 2013) (defendant sentenced to 120 months imprisonment, lifetime supervised release after guilty plea to one count possession child pornography).[10]

---

[10]   See also United States v. D'Binion, 2013 WL 1983962 (5th Cir., May 15, 2013) (per curiam) (designated unpublished) (defendant sentenced to multiple concurrent sentences of 10 years, followed by

Bacon has produced no *evidence* that he could have obtained a better plea agreement from the government or that the government would have agreed to reduce the charges against him. Counsel's affidavit and other evidence in the record contradict Bacon's *belief* that counsel could have secured a better agreement. Additionally, a review of other child pornography cases within this circuit reveals that Bacon's sentence was well within the range of punishments for similar conduct. Bacon has not met his burden to establish that counsel's conduct was deficient.

---

10 years supervised release for receipt, distribution and possession child pornography); United States v. Richardson, 713 F.3d 232 (5th Cir. 2013) (after bench trial on stipulated facts, defendant convicted of possession and distribution child pornography, sentenced to 120 months and 151 months concurrent sentences); United States v. McLean, 419 Fed. App'x. 473 (5th Cir., Mar. 22, 2011) (per curiam) (designated unpublished) (single count receipt child pornography 120 months, lifetime supervised release ); United States v. Vasquez, 371 Fed. App'x. 541 (5th Cir., Mar. 29, 2010) (one count receipt child pornography, 97 months imprisonment and lifetime supervised release); United States v. Winkler, 639 F.3d 692 (5th Cir. 2011) (convicted after jury trial of five counts receipt and possession child pornography involving 422 images and 44 videos, sentenced to 72 and 73 months imprisonment to run concurrently with 15 years supervised release); United States v. Comeaux, 371 Fed. App'x. 468 (5th Cir., Mar. 22, 2010) (per curiam) (designated unpublished) (defendant sentenced to 240 months for production of child pornography); United States v. Moore, 328 Fed. App'x. 308 (5th Cir., July 1, 2009) (per curiam) (designated unpublished) (defendant sentenced to 151 months for transporting or shipping four child pornography videos); Havens v. United States, No. 6:07-cr-36, 2012 WL 874568 (E.D. Tex., Feb. 9, 2012) (designated unpublished) (defendant convicted of transportation and possession child pornography involving 937 images, sentenced to 210 months after bench trial, defendant rejected a plea offer with maximum sentence 10 years).

D.    **Counsel's Alleged Ineffective Assistance for Failure to Challenge the Search of Bacon's House and his Statements Before Plea and On Appeal**

Bacon claims that counsel was ineffective on the ground that counsel failed to challenge the legality of the search of Bacon's home or Bacon's statements to the officers during that search.

During rearraignment, the government described the investigation leading up to the warrant for the search of Bacon's house.[11] The AUSA also stated, "[o]n February the 5th of

---

[11]    18 MR. DUKE: Yes, Your Honor. This was actually a
        19 fairly long investigation, Your Honor, that began with the
        20 Corpus office in June of 2005. The Corpus Christi ICE office
        21 had received information from the ICE Cyber Crimes Center
        22 about a potential subscriber to a known child pornography
        23 site who had used a MasterCard with the account number ending
        24 in the numbers 8029. This account was identified as
        25 belonging to Welles D. Bacon. Mr. Bacon had at the time
        1 subscribed to a website called Teen.com which was a known
        2 child pornography website. This subscription occurred on
        3 January the 21st of 2005. He was further identified by using
        4 a particular IP address, 212.138.64.174, which came back to
        5 an internet service provider called Ripenet. It was
        6 determined at that time that this IP address had been
        7 assigned to a block of IP addresses which were being used in
        8 the country of Saudi Arabia. Records checks revealed that
        9 the person who had obtained the subscription was using the
        10 email address Wellesdb@Saudionline.com.sa at that time.
        11 Records checks also provided an address here in Corpus
        12 Christi which was being associated with Mr. Bacon. . . .
                    *        *        *        *
        19 . . . . So the
        20 investigation sort of languished for a while, while Mr. Bacon
        21 was out of the country. Then, on July the 7th of 2007,
        22 Mr. Bacon's brother was contacted. He identified the new
        23 address as being associated with Mr. Bacon, and Mr. Bacon's
        24 brother told the agents that Mr. Bacon the defendant was
        25 currently in Baghdad, Iraq. The realtor who was responsible
        1 for Mr. Bacon's home was contacted and he confirmed this as
        2 well. On October the 19th of 2007, a new report came from
        3 the Cyber Crimes Center, from ICE, which indicated that
        4 Mr. Bacon was associated with a subscription to a group
        5 called Home Collection, which is a known child pornography
        6 provider, and that he had subscribed to this child
        7 pornography provider on nine occasions which ranged from

2009, United States Magistrate Judge Brian Owsley signed a search warrant for Mr. Bacon's home here in Corpus Christi. The search warrant was executed by ICE agents as well as members of the Corpus Christi Police Department." D.E. 67 at 28. The AUSA further stated, "On February the 6th, during the execution of Mr. Bacon's search warrant at his home, Mr. Bacon was advised of his Miranda rights. He signed a written waiver acknowledging the same. He was interviewed regarding his interest in child pornography." Id. at 29. At the end of the AUSA's factual recitation, Bacon testified that the facts were correct with a reservation unrelated to the search, the warrant, or his statements. D.E. 67 at 31. Bacon's testimony confirming the correctness of the AUSA's description of the basis for the search warrant, the search, and Bacon's receipt of Miranda warnings, are entitled to a strong presumption of truthfulness. Lampaziane, 251 F.3d at 524; Cothran, 302 F.3d at 283-84.

---

8 October the 24th of 2006 to January the 8th of 2007. It was
9 then learned that Mr. Bacon had finally reentered the United
10 States on August the 23rd of 2008. On March the 17th of
11 2008, the ICE agent in Boston, Massachusetts learned of the
12 existence of a website which was providing child pornography
13 under the commercial name of C.P. Company. This website had
14 numerous images and videos depicting children between the
15 ages of six and eight years engaged in sexually explicit
16 conduct and charged fees up to $490 for various
17 subscriptions. The, according to the website the purchasers
18 were to utilize Western Union or Moneygram to send payments
19 to the C.P. Company, to persons in Eastern Europe. A
20 subpoena was sent to Western Union regarding the
21 identification of persons who had wired money to C.P.
22 Company. Mr. Bacon was identified as one of those persons
23 through a money transfer control number that was unique to
24 those transfers, and they indicated that Mr. Bacon had sent
25 $900 in August of 2005 to persons in Russia and that he had
1 also sent $490 on November the 2nd, 2008 to another person in
2 Russia. On February the 5th -- and both of those amounts,
3 $900 and $490, are amounts that are described on the C.P.
4 Company commercial website as providing subscriptions for
5 various amounts of times and access to various types of
6 material. . . . .

D.E. 67 at 25-28.

In light of Bacon's admission that the government obtained a search warrant after a lengthy investigation and that he was advised of his rights before he gave a statement, Bacon has not met his burden to demonstrate that counsel was ineffective because he failed to challenge the warrant or the statement. Bacon's current allegations that no warrant existed, his counsel failed to review the warrant and affidavit,[12] and that Bacon's will was allegedly overborne by the presence of agents with drawn guns at some time during the search, are contradicted by his previous admissions and are not sufficient to overcome his previous testimony.[13] Bacon's

---

[12]   Counsel Jones states,

> In the memorandum in support of the motion to vacate, Mr. Bacon complains that I did not file motions to suppress the "warrantless" search of his house and his in-custody statements to government agents. After reviewing the discovery materials in the United States Attorneys Office, I determined there was a warrant to search Mr. Bacon's house, and that there was substantial probable cause for issuing the warrant. Mr. Bacon never indicated to me that his statements were coerced or induced by promises, or that he made the statements because he was intimidated by law enforcement officers or otherwise felt like he had to make the statements. From all the information, it appeared Mr. Bacon was cooperative from the beginning, and I thought it was in his best interest to benefit from his early cooperation. If he had indicated to me that his statements were not made voluntarily, then I would have considered filing a motion to suppress his statements. After reviewing the discovery materials, and from my conversations with Mr. Bacon, it was my opinion there were no arguable grounds for attacking the warrant or the voluntariness of Mr. Bacon's statements. Balancing the remote chance that motions to suppress would have led to dismissal of the charges, against the substantial risk of the government withdrawing its settlement offer if such motions were pursued, it was my opinion that it was not in Mr. Bacon's interest to file such motions.

D.E. 107 at p. 2.

[13]   Bacon does not claim he has never seen the search warrant. He only claims he has not been able to obtain a copy of it in these proceedings. At the time of the search,, the officer was required to provide Bacon with a copy of the warrant and a receipt for the property seized. Fed. R. Crim. P. 41(f)(C). The government pointed out that search warrants obtained before charges are filed are handled separately from the criminal proceedings and are not routinely filed in the criminal docket.

admissions make it unnecessary for the Court to resolve the contradiction between Bacon's and counsel's affidavits.

Bacon also claims that his appellate counsel should have raised the allegedly illegal search of his home and his allegedly involuntary statement on appeal. Appellate counsel is not deficient for not raising every non-frivolous issue on appeal. Phillips, 210 F.3d at 348. To the contrary, counsel's failure to raise an issue on appeal will be considered deficient performance only when that decision "fall[s] below an objective standard of reasonableness." Id. This standard requires counsel "to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful." Id. "Solid, meritorious arguments based on directly controlling precedent should be discovered and brought to the court's attention." Id.

On direct appeal, counsel would have had difficulty raising the Fourth Amendment issue. The only evidence in the record demonstrated that the government had a warrant to search the premises based upon probable cause, Bacon waived his Miranda rights, and provided a voluntary statement. Additionally, by his guilty plea, Bacon waived all non-jurisdictional defects, including challenges to the search and to the voluntariness of his statement. It is well-settled that "[w]hen a defendant enters a voluntary and unconditional guilty plea, the plea has the effect of waiving all nonjurisdictional defects in the prior proceedings." United States v. Daughenbaugh, 549 F.3d 1010, 1012 (citing United States v. Stevens, 487 F.3d 232, 238 (5th Cir. 2007)). Counsel's failure to raise any alleged Fourth Amendment violation on appeal did not constitute deficient performance.

**E.      Counsel's Alleged Ineffective Assistance at Sentencing**

Bacon claims that sentencing counsel performed deficiently by not investigating Bacon's past, by not sufficiently arguing mitigating factors or downward departures such that his sentence

was harsher than it would have been had counsel been better prepared. Among his complaints are, counsel failed to 1) learn relevant facts about Bacon's life, 2) make appropriate motions for departure, or 3) bring relevant facts to the Court's attention to mitigate or reduce his sentence.

As noted in the PSR, in cases involving child sexual abuse or pornography, the sentencing guidelines provide that "the sentencing court *may* impose a sentence below the range established by the applicable guidelines *only* if the court finds that there exists a mitigating circumstance of a kind or degree, that–(1) has been affirmatively and specifically identified as a permissible ground of departure . . . ." U.S.S.G. § 5K2.0(b).

> The grounds enumerated in this Part K of Chapter Five are the sole grounds that have been affirmatively and specifically identified as a permissible ground of downward departure in these sentencing guidelines and policy statements. Thus, notwithstanding any other reference to authority to depart downward elsewhere in this Sentencing Manual, a ground of downward departure has not been affirmatively and specifically identified as a permissible ground of downward departure within the meaning of section 3553(b)(2) unless it is expressly enumerated in this Part K as a ground upon which a downward departure may be granted.

Id.

### 1. *Counsel's failure to seek downward departures*

Bacon claims that counsel should have, but did not, seek downward departures at sentencing. Bacon does not mention the policy in the guidelines restricting application of downward departures in these cases. Among the grounds of downward departure in Chapter 5K are, Lesser Harms § 5K1.11, Coercion and Duress § 5K1.12, Diminished Capacity § 5K2.13, Voluntary Disclosure to Authorities § 5K2.16, Aberrant Behavior § 5K2.20, Specific Offender Characteristics as Grounds for Downward Departure in Child Crimes and Sexual Offenses § 5K2.22, and Discharged Term of Imprisonment § 5K2.23. The majority of these approved departures do not apply to Bacon. The only potential departures raised by the record and Bacon's

arguments pursuant to the guidelines and the controlling statutory authority are Diminished Capacity and Specific Offender Characteristics.

      a.  <u>Diminished Capacity</u>

Diminished Capacity,

> if (1) the defendant committed the offense while suffering from a significantly reduced mental capacity; and (2) the significantly reduced mental capacity contributed substantially to the commission of the offense. Similarly, if a departure is warranted under this policy statement, the extent of the departure should reflect the extent to which the reduced mental capacity contributed to the commission of the offense.
>
> However, *the court may not depart* below the applicable guideline range if (1) the significantly reduced mental capacity was caused by the voluntary use of drugs or other intoxicants; (2) the facts and circumstances of the defendant's offense indicate a need to protect the public because the offense involved actual violence or a serious threat of violence; (3) the defendant's criminal history indicates a need to incarcerate the defendant to protect the public; or (4) *the defendant has been convicted of an offense under chapter 71, 109A, 110, or 117, of title 18, United States Code.*

U.S.S.G. § 5K2.13 (emphasis added). Bacon pled guilty to possession of child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B), (b)(2), and 2256(8)(A). D.E. 46. Those statutes are part of Chapter 110. Diminished capacity does not apply in child pornography cases. See <u>Potts v. United States</u>, 566 F. Supp.2d 525, 543 & n.7 (N.D. Tex. 2008). Although the guidelines are no longer mandatory, this Court is required to consider them and use them as a starting point to analyze sentencing factors. <u>United States v. Mejia-Huerta</u>, 480 F.3d 713, 771 (5th Cir. 2007).

      During Bacon's sentencing, when determining Bacon's period of incarceration, this Court expressed concern over the need to protect the public, an additional reason that departure for diminished capacity would not apply, even if Bacon had produced evidence raising the issue.

Counsel was not ineffective for failing to urge a downward departure that is discouraged by the guidelines and unsupported by the evidence.

                    b.  <u>Specific Offender Characteristics</u>

A sentencing court may consider downward departure for Specific Offender Characteristics, "(1) Age may be a reason to depart downward only if and to the extent permitted by § 5H1.1,  (2) An extraordinary physical impairment may be a reason to depart downward only if and to the extent permitted by § 5H1.4, and (3) Drug, alcohol, or gambling dependence or abuse is not a reason to depart downward."

The sentencing transcript reveals that counsel Barroso made arguments that implicate the provisions of this subsection. He argued that Bacon's age, physical condition and medical status warranted mitigation at sentencing. To the extent that Bacon claims counsel did not make such arguments, his argument is contradicted by the record. This ground is without merit.

Bacon further argues that the Court should have downwardly departed on grounds of his law abiding history, his age at first conviction, and his previous lack of criminal record. The PSR reflected Bacon's lack of criminal record and factored that into the calculation of Bacon's guideline sentence. Counsel made all these arguments at sentencing and the Court considered them. Counsel has not been shown to be ineffective at sentencing on this ground.

            2.  *Counsel's failure to present childhood trauma to the Court*

Bacon claims that counsel should have informed the Court of Bacon's physical abuse as a child by his overly strict parents, the death of his alcoholic mother and the suicide of his sister. Bacon was interviewed by the Probation Department before sentencing and advised the Probation officer,

> He is one of six children born to this union and was raised in an intact household with both parents present throughout his youth. The defendant reported close,

happy and supportive relationships with all family members and no emotional, physical, sexual or substance abuse issues in the home during his formative years. The defendant resided in the family home until after graduating high school in 1955. His father died shortly thereafter and he joined the U.S. Marines.

\* \* \* \*

The defendant's father died in 1955 at age 60 from a blood clot. He supported the family as a construction contractor and provided well for the family. According to the defendant, they had weekly family gatherings and all sons were expected to work at the family business when not in school. The defendant's mother died in 1971 from a brain hemorrhage. She supported the family as an executive secretary. The defendant has three surviving siblings who are as follows: Ellen Sadd, age 88, is a retired secretary who resides in California; Tom Bacon, age 83, is a retired construction contractor who resides in Houston; and James Bacon, age 76, is a sheet metal worker and apartment maintenance person who resides in Corpus Christi, Texas. One sibling, Joseph Bacon, a retired welder, died in 2008 at age 79 from diabetes-related complications. Another sibling, Burta Culpepper, committed suicide in 1986.

D.E. 22 at ¶¶ 40-41. Bacon's claims are not supported by his own statements to the Probation Department.

Part of the consideration for Bacon's plea agreement with the government included his "truthful rendition of facts to the U.S. Probation Department for the preparation of Defendant's Pre-sentence Investigation Report." D.E. 25 at ¶ 2. Consistent with Bacon's agreement to be truthful with the Probation Department, to the extent Bacon alleges facts that contradict those he provided in preparation of the PSR, this Court credits the PSR. Accordingly, counsel could not have been ineffective for failing to bring to the Court's attention Bacon's allegedly alcoholic mother, the death of his sister from suicide[14] and the allegedly extreme physical abuse visited upon him by his father.

---

[14]   Bacon was born in 1939. He was 47 in 1986 when his sister committed suicide and approximately 41 when his mother died.

Moreover, Bacon's daughter Terri testified that Bacon's father beat him severely as a child during the Court's final sentencing hearing. Bacon cannot show prejudice from counsel's failure to bring this information to the Court's attention at sentencing.

   3. *Counsel's failure to investigate and urge PTSD at sentencing in mitigation of Bacon's sentence*

Bacon claims that sentencing counsel did not investigate sufficiently to learn that Bacon suffered from PTSD and failed to raise his PTSD with the Court to mitigate Bacon's sentence. Bacon also suggests that he was not competent due to his PTSD.[15] Bacon contends that these failures constituted ineffective assistance of counsel that resulted in an increased sentence.

"In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Strickland v. Washington, 466 U.S. at 691. "The *reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions*; the reasonableness of counsel's investigative decisions is particularly dependent upon such information."

Id. (emphasis added). Bacon did not tell the Probation Department or the Court about his PTSD, nor does he allege that he told his attorney.[16] The PSR recites,

> Welles D. Bacon is 5'7" tall, weighs 205 pounds and has brown hair and blue eyes. He has no tattoos, but has scars on his right ankle and right wrist from prior surgeries. He reported no residual problems from these injuries. The defendant

---

[15]   Competence to stand trial means that a defendant has sufficient present ability to consult with his lawyer with a reasonable degree of understanding and he has a rational and factual understanding of the proceedings against him. Dusky v. United States, 362 U.S. 402 (1960) (per curiam); Dunn v. Johnson, 162 F.3d 302, 305 (5th Cir. 1998);

[16]   Bacon's initial affidavit does not state that he told counsel about the symptoms he described. In his second affidavit, Bacon states, "Dr. Hamilton never asked me about PTSD." D.E. 118 at ¶ 1. "Not once did Barroso ever ask me about my PTSD condition." Id. at ¶ 2.

stated he suffers from high blood pressure for which he takes daily medication. Otherwise, he advised he has never suffered from any major medical problems and he is not currently under the care of a physician.

According to the defendant, *he has never been treated by a psychiatrist or psychologist, and has never been to counseling.* Other than the defendant's commission of the instant offense, *there is no indication of any problems in this area.*

D.E. 22 at ¶¶ 47, 48 (emphasis added).

Bacon testified before the Court and the federal magistrate Judge that he was competent on three separate occasions, at arraignment, rearraignment and at sentencing. He denied any mental health issues each time. In each of the seven hearings that Bacon participated, Bacon responded appropriately to the Court's questions and swore he understood the proceedings. At the final sentencing hearing in January 2010, Bacon testified that he had not seen a doctor in five years. D.E. 52 at p. 13. The evidence also establishes that Bacon was a high functioning person in his professional life which extended until shortly before his arrest.

Counsel denies that Bacon ever told him or the psychologist counsel hired to examine Bacon anything about the PTSD symptoms. D.E. 108 at ¶ 2.[17] Although this Court may not decide contested issues of fact from competing affidavits, there is no contested issue here. United States v. Hughes, 635 F.2d 449, 451 (5th Cir. 1981). Bacon claims that counsel did not discover his PTSD; Bacon does not claim he told counsel of his PTSD. Based upon this record, counsel

---

[17]    I met with Mr. Bacon on numerous occasions to find out about his past as well as any present factors that might assist him at sentencing. As part of this, I made arrangements for Mr. Bacon, while he was incarcerated, to be evaluated by Dr. Paul Hamilton, a psychologist in an effort to see whether any issues could be developed that could assist at sentencing. *Neither did Mr. Bacon mention that he was diagnosed with Post Traumatic Stress Syndrome at any point in our conversations. As far as I know, neither did he mention this to Dr. Hamilton as it did not appear on his report nor did Dr. Hamilton relate this to me.*

Id. (emphasis added).

had no reason to pursue mental health or PTSD inquiries in the absence of any information from Bacon that he should do so.

Bacon now advises the Court that he sought psychological help in the Bureau of Prisons and has provided the Court with some of his medical records. In 2012, two days after the Clerk received Bacon's motion to vacate, Bacon saw the staff psychologist at Bacon's request. At that time he was diagnosed with PTSD-Chronic without delayed onset. D.E. 114 at p. 3. Bacon claimed not to have spoken to anyone about his combat and family history. Id. Bacon terminated therapy within a month. Id. at 5. Nothing in these records or any other court proceeding suggests that Bacon's PTSD affected his competency at the time he was before the Court.

Nevertheless, at sentencing, Bacon's daughter Terri read from emails Bacon sent her in which he described symptoms of PTSD. D.E. 52 at pp. 24-29.[18] Thus, this Court was informed that Bacon had been under severe stress while he was overseas during the period he downloaded and possessed child pornography. The information Bacon claims should have been presented to the Court was presented.

Bacon has not met his burden to establish that counsel exhibited a lack of reasonable professional diligence in investigating Bacon's history of PTSD, or that Bacon was prejudiced. Counsel's failure to urge undiagnosed PTSD.

---

[18]     4 I am additionally concerned because my
         5 father finally came home from Iraq a year and a half ago
         6 because of the stress he was suffering from a result of
         7 staying hyper vigilant for 17 years beginning with the
         8 bombing of the American compound in Saudi Arabia, and I have
         9 some emails that manifest and show clearly that stress that
        10 he was under, and I'd like to read them if it's okay with the
        11 Court.
        12 THE COURT: Anything you would like to do is fine
        13 with me.

D.E. 52 at 24.

4. *Alleged failure to bring mitigating facts to the Court's attention*

Bacon alleges counsel failed to bring (unspecified) mitigating facts to the Court's attention. The Court has already determined that counsel's failure to urge physical abuse, alcoholic mother, suicide death of sister and PTSD did not constitute ineffective assistance of counsel.  Bacon also claims that counsel could have made a detailed rebuttal of the claims by daughters Laurie and Danielle that Bacon sexually abused them as children. D.E. 188 at ¶ 10. However at sentencing, Bacon, through counsel, admitted that he sexually assaulted his daughters Terri and Danielle.[19] Counsel  cross-examined daughter Laurie, and conducted direct examinations of Terri, Danielle, and the fourth daughter Michelle, to rebut Laurie's testimony about the events she claimed.

Counsel has the responsibility in the exercise of his or her professional judgment to present evidence in the manner he or she thinks is most effective. That a defendant would have done it differently does not establish that counsel was ineffective. In deciding whether counsel's performance fell below objective professional standards, "the court is 'highly deferential' and must apply a strong presumption that counsel's performance was reasonable or 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689. Using cross-examination and direct examination of other witnesses to rebut or discredit a witness is a recognized legal strategy. That legal strategy does not have the significant risks connected with placing Bacon, a

---

[19]     1 THE COURT: Well, he disagrees that he molested two
        2 of his daughters, is that the objection?
        3 MR. BARROSO: He does not disagree with that. He
        4 disagrees -- there's a lot of other incidences that are
        5 described by one particular daughter that he denies happened.
                    *       *       *       *
        4 THE COURT: Okay. He sexually molested two of the
        5 four daughters?
        6 MR. BARROSO: Yes.

D.E. 68 at 14-15.

convicted sex offender, on the witness stand to deny that he molested one daughter while exposing him to cross-examination by the government that he molested two other daughters. Hughes, 635 F.2d at 452-53 ("a defense counsel's trial strategy, which would include his asking or refraining from asking certain questions of witnesses, does not reach constitutional proportions. "). Bacon has not shown that counsel's performance fell below professional standards or that he suffered any prejudice.

   5.   *Counsel's failure to object to automatic imposition of lifetime supervised release and failure to raise issue on appeal*

Bacon claims that his sentencing counsel was ineffective because he failed to object to the Court's automatic imposition of lifetime supervised release. Counsel states that he did not object because, in his professional legal opinion, the Court was within its discretion to impose a lifetime term of supervised release. D.E. 108 at ¶ 4. Bacon was 72 years old at the time of sentencing.  A sentence of 10 years or more of supervised release would likely have the same practical effect as the sentence the Court imposed.

At the time Bacon was sentenced, "Congress and the Sentencing Commission intended to impose life terms of supervised release on sex offenders." United States v. Allison, 447 F.3d 402, 406 (5th Cir. 2006); see also U.S.S.G. § 5D1.2(b)(2) ("(Policy Statement) If the instant offense of conviction is a sex offense, however, the statutory maximum term of supervised release is recommended.").

Bacon cannot establish any reasonable probability of a different outcome in his supervised release had sentencing counsel lodged an objection at sentencing. Bacon has not established any prejudice from counsel's failure to object.

Bacon also claims that appellate counsel should have challenged his lifetime supervised release on appeal. Counsel's failure to raise an issue on appeal will be considered deficient

performance only when that decision "fall[s] below an objective standard of reasonableness." Phillips, 210 F.3d at 348. Counsel is required "to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful." Id. "Solid, meritorious arguments based on directly controlling precedent should be discovered and brought to the court's attention." Id.

At the time of Bacon's sentencing and appeal, the Fifth Circuit had affirmed numerous cases in which the defendant was sentenced to lifetime supervised release in child pornography cases. United States v. Nazerzadeh, 280 Fed. App'x. 432, 434 (5th Cir., June 6, 2008) (per curiam) (designated unpublished) (affirming lifetime supervision defendant convicted of possession and distribution of child pornography); United States v. Toomey, 271 Fed. App'x. 349, 440-41 (5th Cir., March 28, 2008) (affirming lifetime supervision defendant convicted multiple counts possession and aiding and abetting interstate transportation child pornography); United States v. Chapman, 235 Fed. App'x. 341, 342 (5th Cir., Aug. 17, 2007) (per curiam) (designated unpublished) (affirming lifetime supervision single count possession child pornography); United States v. Planck, 493 F.3d 501, 505 (5th Cir. 2007) (lifetime supervision in child pornography consistent with sentencing factors and guidelines, affirming lifetime supervision where defendant convicted of seven counts including distribution and possession child pornography); United States v. Gonzalez, 445 F.3d 815, (5th Cir. 2006) (affirming lifetime supervised release, defendant convicted of possessing a computer that contained more than 10 images of child pornography).

Bacon cites United States v. Alvarado, 691 F.3d 592, 597 (5th Cir. 2012), in which the Fifth Circuit remanded a sentence of lifetime supervision in a child pornography case for resentencing on the ground that the district court had automatically imposed lifetime supervised

release without considering the defendant's individual characteristics. <u>Alvarado</u> was decided two years after Bacon's sentencing and after the Fifth Circuit had decided Bacon's appeal in 2011. This Court is required to consider counsel's conduct at the time it occurred and without the benefit of hindsight. No ineffective assistance of counsel is shown. Bacon has not met his burden to show that appellate counsel's performance fell below professional standards or that Bacon was prejudiced.

6. *Bacon's complaint that his sentence is too long*

Bacon complains that his sentence is too long and does not further the goals of § 3553(a). D.E. 99 at p. 19. He includes this claim as part of his claim of ineffective assistance of counsel at sentencing. To the extent this claim is meant to be a free-standing complaint of the reasonableness of his within guidelines sentence, Bacon's claim is not cognizable. It is well established that technical application of the sentencing guidelines is not subject to collateral review in a § 2255 motion. <u>See, e.g.</u>, <u>United States v. Williamson</u>, 183 F.3d 458, 462 (5th Cir. 1999). "Section 2255 motions may raise only constitutional errors and other injuries that could not have been raised on direct appeal that will result in a miscarriage of justice if left unaddressed. Misapplications of the Sentencing Guidelines fall into neither category and hence are not cognizable in § 2255 motions." <u>Id.</u>

Bacon claims he cannot reasonably be rehabilitated in prison and his chances for successful treatment are better in the community than in prison. D.E. 99 at pp. 20-21. The Court imposed counseling as part of his terms of supervised release and recommended placement in a BOP facility for sex offenders while he is incarcerated to promote Bacon's rehabilitation. D.E. 46 at pp. 2, 4.

Bacon claims counsel should have made arguments for a shorter period of incarceration and cites cases in which such arguments were successful. In one of those cases, United States v. Cherry, 487 F.3d 366 (6th Cir. 2007), the defendant wanted to continue out-patient counseling. Unlike in that case, Bacon was interviewed by a defense expert psychologist before sentencing who performed psychological testing. After the testing, counsel reviewed the findings with Bacon and they determined that the expert's testimony would not be helpful. Bacon did not seek counseling until he got to prison, after he filed the present motion, and then discontinued counseling after a month. In light of these facts, counsel's decision not to argue that Bacon's sentence should be shorter on the grounds of Bacon's need to continue counseling or for rehabilitative purposes is not shown to be professionally unreasonable.

Moreover, § 3553(a) requires the Court to consider multiple factors in determining an appropriate sentence, including protection of the public, deterrence, and the seriousness of the offense. All of these issues weighed on the Court's mind as evidenced by the sentencing transcript.

> 19 THE COURT: I have, and I just don't think
> 20 remoteness is applicable in this. He has shown a pattern, at
> 21 least I so find, of interest in abusing children for a long
> 22 time. So I think that makes the total offense level 33,
> 23 criminal history category 1, and the statutory maximum,
> 24 though, trumps the guidelines, because otherwise it would be
> 25 135 to 168, so the maximum penalty for this is 10 years. So
> 1 that's 120 months, five years to life supervised release,
> 2 17,500 to 175,000 fine range, and a $100 special assessment.
> 3 Without waiving your objection as to pattern, is that
> 4 correctly calculated, Mr. Barroso?
>         *     *     *     *
> 10 THE COURT: He fits in the actual, almost exactly
> 11 the profile of the child predator, from the child pornography
> 12 to the incestual relationships with his children. That's
> 13 somebody's sexual preference, and they very rarely take that
> 14 out in an adult world. Usually what I have is people coming
> 15 in where these gentlemen have taught at Boy Scouts, they have

> 16 taught in youth choirs, they have the church people coming in
> 17 and talking about what fine people they are, and on and on
> 18 and on without a single clue. . . .
> 20 THE COURT: Very common. And they are in the
> 21 minority, it seems like, the ones who just never go out of
> 22 their house and just sit in front of the computer all day
> 23 long.
>                    *       *       *       *
> 9 THE COURT: He is the market, Mr. Barroso, for this
> 10 product. He is the market. He is the reason these children
> 11 are raped on videos and sent out to people like Mr. Bacon.
> 12 Without the market, it wouldn't be happening.

D.E. 52 at 7, 9-10. The Court further advised Bacon that "if I had only considered the factors in 3553A and if there had not been a statutory maximum, you would have had a much higher sentence, looking at the nature and circumstances of the offense and history and characteristics of you in particular. And most important is to afford adequate deterrence to your criminal conduct and protect the public from your future crimes and behavior. If there had -- I cannot imagine ever giving you a sentence less than 120 months." Id. at 40. The Court finds that Bacon has not met his burden to establish that counsel's conduct fell below reasonable professional standards at sentencing.

## F.     Counsel's Alleged Ineffective Assistance Because Bacon Was Exposed to a Sentence Greater than the Maximum Statutory Sentence

Bacon claims that counsel was ineffective on the ground that counsel failed to ensure that Bacon would not be exposed to a sentence greater than the statutory maximum of ten years. Bacon claims that if he is sentenced to a term of imprisonment for violation of his supervised release, he will be imprisoned for more than the maximum statutory sentence of ten years. He claims such potential imprisonment is an additional sentence that he was not told of in his plea colloquy and had he known, he would have taken his chances at trial. At trial, Bacon would have been exposed to up to ten years for each count of the indictment, in addition to supervised release

up to life for each, separate fines and penalties, and the exposure to revocation of each of his terms of supervised release for a single violation of each term of supervised release.

Bacon was advised both at arraignment and rearraignment that violation of his supervised release could result in additional prison time over and above his initial sentence. The statutory scheme applicable to Bacon's conviction *requires* a defendant who is sentenced to a term of imprisonment, to be sentenced to a term of supervised release. 18 U.S.C. §§ 2252A(b)(2), 3583(a),(k). The maximum sentence of imprisonment for Bacon's violation of supervised release and its revocation is two years. 18 U.S.C. § 3583(e).

As to Bacon's complaint that his potential term of incarceration could exceed the statutory maximum of 10 years, imprisonment for violation of supervised release does not extend a defendant's term of imprisonment for the initial crime. United States v. Celestine, 905 F.2d 59, 60 (5th Cir. 1990) (citing United States v. Butler, 895 F.2d 1016 (5th Cir. 1989)); see also United States v. Williams, 919 F.2d 266, 271 (5th Cir. 1990); United States v. Talamantes, 153 Fed. App'x. 312 (5th Cir., Nov. 9, 2005) (per curiam) (designated unpublished); Lozano-Loya v. United States, 2011 WL 1302919 at *7 (W.D. Tex., Feb. 23, 2011) (designated unpublished) ("the fact that Movant's supervised release violation caused his sentence to exceed the allowable term of punishment for a § 1326 violation does not violate Movant's rights. Incarceration for a supervised release violation is separate from incarceration for the primary offense and is specifically authorized by Congress.").

To the extent that Bacon's claim is that the Court violated Rule 11's requirements and that appellate counsel should have raised the issue on appeal, Bacon's claim is also without merit. Rule 11 provides an important safeguard to ensure that a defendant's plea is voluntary, but a violation of its terms is subject to harmless error. Fed. R. Crim. P. 11(h); United States v.

Johnson, 1 F.3d 296, (5th Cir. 1993) (en banc) ("Henceforth, if a mistake is made by the district court during the Rule 11 colloquy, it shall be reviewed for harmless error regardless of whether, under our prior system, the error or omission would have been classified as either total or partial, or would have been found to implicate either a core or non-core concern."); United States v. Guillory, 207 F.3d 657 (5th Cir., Jan. 4, 2000) (Table) (text in Westlaw).

Following Johnson, the inquiry on appeal is whether "the sentencing court varied from Rule 11 procedures. Second, if the court did stray from Rule 11 requirements, we ask whether the variance effected the defendant's substantial rights, in that 'knowledge and comprehension of the full and correct information would have been likely to affect his willingness to plead guilty.'" Guillory, 107 F.3d at *2. The cases Bacon cites predate Johnson and are no longer correct statements of the standard for assessing Rule 11 violations.

This Court properly advised Bacon that a violation of his supervised release could result in additional periods of incarceration as required by Rule 11. Bacon was told that a violation of supervised release could result in additional imprisonment at arraignment and rearraignment, before he pled guilty. Bacon testified he understood the full extent of his potential punishment both times. Bacon's claim is contradicted by the record.

## G.     Bacon's Request for an Evidentiary Hearing

Bacon seeks an evidentiary hearing on his claims. An evidentiary hearing is required "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." United States v. Rivas-Lopez, 678 F.3d 353, 358 (5th Cir. 212) (citing 28 U.S.C. § 2255(b)). In this case, the record, supplemented by this Court's recollection of the proceedings and additional evidence, establishes that Bacon is entitled to no relief on his claims. Bacon's request for evidentiary hearing is denied.

## V.  CERTIFICATE OF APPEALABILILTY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Bacon has not yet filed a notice of appeal, the § 2255 Rules instruct this Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, § 2255 Rules.

A COA "may issue. . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits."  Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further.  United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon Slack, 529 U.S. at 483-84).    As to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484 (emphasis added).

Based on the above standards, the Court concludes that Bacon is not entitled to a COA on any of his claims. That is, reasonable jurists could not debate the Court's resolution of his claims, nor do these issues deserve encouragement to proceed. See Jones, 287 F.3d at 329.

## VI.   CONCLUSION

For the foregoing reasons, Bacon's motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 (D.E. 98) is DENIED and he is also DENIED a Certificate of Appealability.

SIGNED and ORDERED this 17th day of September, 2013.

_____

Janis Graham Jack

Senior United States District Judge